IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KATHERINE KISER,<br><br>Plaintiff,<br><br>vs.<br><br>TERRANCE JACKSON; BUREAU OF INDIAN AFFAIRS, UNITED STATES OF AMERICA; and DOES 1–5,<br><br>Defendants. | CV 22–181–M–DWM<br><br>ORDER and<br>DEFAULT JUDGMENT |

In November 2019, Plaintiff Katherine Kiser was attacked by a dog while walking on a public road near her home on the Flathead Indian Reservation in Moiese, Montana. (Doc. 19 at ¶¶ 22–23.) The dog was owned by Terrance Jackson, who was employed by, and living on property owned by, the Bureau of Indian Affairs. (*Id.* ¶¶ 15, 17, 21.) A neighbor intervened during the attack and, after fighting the dog off with a tire iron, drove Kiser to the hospital. (*Id.* ¶¶ 24–25.) Kiser sustained serious injuries to her arm and was ultimately life-flighted to Kalispell Regional Medical Center. (*Id.* ¶ 25.) Kiser underwent several surgeries and extensive post-operative treatment. (*Id.* ¶¶ 26–27.) She also reports continued physical symptoms and impairments related to the attack, alleging that "the injury

1

prevents her from working full-time and requires extensive occupational therapy." (*Id.* ¶ 27.) After the attack, the pit bull was euthanized. (*Id.* ¶ 28.)

Kiser sued the United States and Jackson, alleging claims of negligence, negligence per se, and public nuisance against Jackson and the United States, as well as a claim of strict liability against Jackson and a claim of respondeat superior against the United States. (*See* Docs. 1, 19.) On February 23, 2024, summary judgment was granted in favor of the United States as to all of Kiser's claims against the government. (*See* Doc. 39.) Kiser now requests default judgment be entered against Jackson, who never appeared in the action. (*See* Doc. 40.) A damages hearing was held on April 2, 2024. Kiser testified, as did certified life care planner Patti Mazurkiewicz.

Based on the testimony presented at the April 2 hearing and the documentary evidence filed by Kiser, default judgment is entered against Jackson in the amount of $1,752,835.96.

## ANALYSIS

The Federal Rules of Civil Procedure allow for entry of default or default judgment when a party against whom affirmative relief is sought fails to plead or otherwise defend against the claim. Fed. R. Civ. P. 55. However, a defendant's default does not automatically entitle the plaintiff to a court-ordered judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Rather, the district court

2

must determine whether default judgment is appropriate, *id.*, based on its consideration of the following factors (the "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff if relief is denied;
> (2) the substantive merits of the plaintiff's claims;
> (3) the sufficiency of the claims raised in the complaint;
> (4) the sum of money at stake in relationship to the defendant's behavior;
> (5) the possibility of a dispute concerning material facts;
> (6) whether default was due to excusable neglect; and
> (7) the strong public policy favoring decisions on the merits.

*See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (noting that "the general rule [is] that default judgments are ordinarily disfavored" and cases should be decided on the merits whenever possible). At this stage of the proceedings, well-pleaded factual allegations, except those related to damages, are deemed admitted and are sufficient to establish the unresponsive defendant's liability. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). As it relates to damages, the amount claimed must be reasonable and substantiated by the plaintiff's evidence. *See* Fed. R. Civ. P. 55(b); *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

## I.   *Eitel* Factors

Because a clear majority of the *Eitel* factors favor default judgment against Jackson, Kiser's request for entry of default judgment is granted.

### A.   Possibility of Prejudice to Plaintiff

3

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment were not entered. *Eitel*, 782 F.2d at 1471. Here, the Court found that the government is not liable, (*see* Doc. 39), and Kiser has demonstrated that she would be unable to seek relief absent default judgment against Jackson. This factor therefore weighs in favor of default judgment.

### B.   Merits and Sufficiency of Claims

The second and third *Eitel* factors require consideration of the merits of the plaintiff's substantive claims and the sufficiency of the operative complaint. *Eitel*, 782 F.2d at 1471–72. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks and alteration omitted). "Of all the Eitel factors, courts often consider the second and third factors to be the most important." *Id.* (internal quotation marks omitted). Here, Kiser brings claims for negligence, negligence per se, public nuisance, and strict liability against Jackson. (*See* Doc. 19.) Ultimately, because Kiser could recover on all her claims except strict liability, these factors favor the entry of default judgment.

#### 1.   Negligence (Count 1)

Four elements are required to prove a negligence claim under Montana law: "(1) duty; (2) breach of duty; (3) causation; and (4) damages." *Dulaney v. St.*

4

*Farm Fire & Cas. Ins. Co.*, 324 P.3d 1211, 1214 (Mont. 2014). Here, Kiser alleges that Jackson knew the dog was aggressive and that he breached his duty of reasonable care by failing to secure the dog on his property, which resulted in Kiser's injuries. (Doc. 19 at ¶¶ 29–33.) Kiser states a viable negligence claim against Jackson.

### 2. Negligence Per Se (Count 3)

In Montana, "[t]he violation of a Montana statute or ordinance enacted for the protection of the public is negligence per se." *Lutz v. United States*, 685 F.2d 1178, 1184 (9th Cir. 1982). "For this rule to apply, the plaintiff must be a member of the class in whose favor a duty was imposed by the statute [] and the defendant must be a member of the class against whom a duty is imposed." *Id.* (internal quotation marks omitted). "In addition, the violation must be the proximate cause of the plaintiff's injuries." *Id.* "Where those three requirements are met, the defendant is negligent as a matter of law." *Id.*

Here, Kiser claims that Jackson is liable under a negligence per se theory because he violated "CSKT Laws Codified § 2–1–1009, which prohibits a person from maintaining a vicious dog, and provides for strict liability against a party who maintains a vicious dog," as well as "Lake County Ordinance—Resolution 861, which makes it a misdemeanor offense pursuant to Mont. Code Ann. § 7–23–2109 to own a vicious dog." (Doc. 19 at ¶¶ 40–48.) Because both of these rules impose

5

duties on dog owners, such as Jackson, to protect members of the public, such as Kiser, and Jackson's failure to fulfill that duty led to Kiser's injuries, Kiser has established a viable negligence per se claim against Jackson.

### 3. Public Nuisance (Count 4)

Montana defines a nuisance as "[a]nything that is injurious to health, indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Mont. Code Ann. § 27–30–101(1). A "public nuisance is one which affects, at the same time, an entire community or neighborhood or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Mont. Code Ann. § 27–30–102(1). Here, Kiser plausibly claims that Jackson "created and allowed the continuation of the dangerous and hazardous condition posed by failing to monitor the Property and to ensure it did not pose a threat to third parties" and that doing so "resulted in a public nuisance." (Doc. 19 at ¶¶ 50–51.) Although there is some question as to the number of people affected by Jackson's dangerous dog, Kiser's pleading, taken as true, establishes that Jackson's dog was a threat to the community.

### 4. Strict Liability

Finally, Kiser alleges that Jackson is strictly liable for her injuries under Montana Code Annotated § 27–1–715, (*see* Doc. 19 at ¶¶ 54–58), which provides:

6

> The owner of a dog that without provocation bites a person while the person is on or in a public place or lawfully on or in a private place, including the property of the owner of the dog, located within an incorporated city or town is liable for damages that may be suffered by the person bitten regardless of the former viciousness of the dog or the owner's knowledge of the viciousness.

§ 27–1–715(1). However, this provision does not apply here because while the attack occurred on a public road, it did not occur "within an incorporated city or town." Although Kiser alleges that this poses an equal protection problem, (*see* Doc. 19 at ¶ 58), the law as written is clear. Kiser's claim for strict liability fails as a matter of law.

### C. Sum of Money

Under the fourth *Eitel* factor, courts must consider the amount of money at stake in relation to the seriousness of the defendant's behavior. *Eitel*, 782 F.2d at 1472. "A large sum of money at stake would disfavor default judgment." *Durland v. Straub*, 2022 WL 2704169, at *6 (D. Or. July 12, 2022) (internal quotation marks omitted). Here, the sum of money involved is considerable but commensurate with the seriousness of Kiser's injuries. (*See* Docs. 42-1, 42-2, 42-3.) Weighed in the balance, this factor does not preclude default judgment.

### D. Possible Factual Disputes

The fifth *Eitel* factor considers the possibility of material factual disputes. *Eitel*, 782 F.2d at 1472. "Because upon entry of default, all well-pleaded facts in the complaint are taken as true, the fifth factor weighs in favor of default judgment

7

when the claims in the complaint are well-pleaded." *Durland*, 2022 WL 2704169, at *7 (internal quotation marks and alteration omitted). As discussed above, Kiser's claims are sufficiently pled and are consistent with the factual record that was developed through the summary judgment process with the government, including Jackson's own statements. (*See* Doc. 31-7 (Jackson Depo.).) This factor therefore weighs in favor of default judgment.

### E. Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *Eitel*, 782 F.2d at 1472. Here, while Jackson neither appeared nor defended the action, he was deposed as part of Kiser's case against the government. (*See* Doc. 31-7.) This factor therefore weighs in favor of default judgment.

### F. Public Policy in Favor of Merits-Based Decisions

Finally, *Eitel* counsels that cases "should be decided upon their merits whenever reasonably possible." 782 F.2d at 1472. "However, this preference, standing alone, is not dispositive, and does not preclude a court from granting default judgment." *Farmer v. Thar Process, Inc.*, 2023 WL 8448498, at *7 (D. Or. Dec. 6, 2023) (internal quotation marks omitted). Thus, even though this factor weighs against default judgment, it does not preclude the entry of default judgment where, as here, the other factors support it. *Id.*

8

## II.   Damages

Because the *Eitel* factors weigh in favor of the entry of default judgment, Kiser is entitled to damages. As mentioned above, however, Kiser cannot simply rest on her pleadings as it relates to damages, *see Geddes*, 559 F.2d at 560, but rather she must provide supporting evidence, *see Cement & Concrete Workers*, 699 F.3d at 234. Here, prior to the damages hearing, Kiser submitted a personal affidavit, (Docs. 42-1, 46),[1] an affidavit and Life Care Plan from Mazurkiewicz, (Doc. 42-2), and past medical records, (Doc. 42-3). Additional exhibits were admitted at the April 2 hearing.[2] As mentioned above, both Kiser and Mazurkiewicz testified as well. Based on the evidence presented, damages are awarded as follows:

| | | |
|---|---|---|
| 1. | Past Medical | $249,431.42 (*See* Doc. 42-3) |
| 2. | Future Medical | $403,404.54 (*See* Doc. 42-2) |
| 3. | Pain/Suffering | $550,000.00 (*See* Doc. 42-1) |
| 4. | Emotional Distress | $550,000.00 (*See* Doc. 42-1) |
| | TOTAL | $1,752,835.96. |

That award is explained in further detail below.

---

[1] It is unclear what the difference is, if any, between these two filings. This Order cites Doc. 42-1.

[2] Some of these exhibits are duplicative or missing pages; they have been filed as offered.

9

A.  **Past Medicals: $249,431.42**

Medical records indicate that Kiser's injuries resulted in a total of $249,431.42 in past medical expenses, as evidenced by a CMS lien in the amount of $211,730.71 and an Optum/AARP payment summary of $37,700.71. (*See* Doc. 42-3.) At the hearing, Kiser offered a medical expense detail summary totaling $234,075.57. While it is unclear what the basis is for the difference between that summary and the medical records submitted at Doc. 42-3, the record supports an award of $249,431.42. (*See* Doc. 42-3.)

B.  **Future Medicals: $403,404.54**

Mazurkiewicz prepared a Life Care Plan for Kiser. (Doc. 42-2 at ¶ 3.) That Plan "outline[s] present and future needs as dictated by the onset of Ms. Kiser's disabilities, including reasonable recommendations for Ms. Kiser's current and future needs to improve and manage her symptoms, prevent or lessen complications/secondary diagnoses, maximize safe, independent functioning, and offer a better quality of life." (*Id.* ¶ 5; *see id.* at 9–45 (the Plan).) That Plan contains the following Projected Future Care Costs Table:

| Projected Future Care Costs: | | |
|---|---|---|
| Description | Expected Range of Total Cost | |
| Projected Evaluations | $ 16,256.52 | $ 23,081.94 |
| Projected Therapeutic Modalities | $ 69,609.59 | $ 137,265.36 |
| Medications | $ 70,651.74 | $ 70,653.62 |
| Home Aids for Independent Functioning | $ 900.50 | $ 1,146.12 |
| Therapeutic Equipment Needs | $ 203.64 | $ 254.55 |

10

| | | | | |
|---|---|---|---|---|
| Home Care/Facility Care | $ | 137,457.85 | - $ | 139,007.85 |
| Diagnostics Studies | $ | 16,562.53 | - $ | 16,800.31 |
| | | | | |
| Total: | $ | 311,642.37 | - $ | 388,209.75 |
| Potential Complications | $ | 39,796.74 | - $ | 39,796.74 |

(*Id.* at 29.) Mazurkiewicz subsequently confirmed, however, that Kiser will need additional vascular surgery, increasing her projection range by $15,194.79 with an additional potential $24,601.95 of costs based on the risk of complications. (*Id.* ¶ 9.) Accordingly, based on Mazurkiewicz's professional opinion, Kiser seeks $403,404.54 in future medical costs. (*Id.* ¶ 10.) That amount is reasonable.

### C.  Pain and Suffering: $550,000

Following the dog attack, Kiser underwent numerous surgeries to save her arm. (Doc. 42-1 at ¶ 7; *see also id* at 7–24 (graphic images of her injuries).) She also had to reside in a skilled nursing living facility for 42 days "to recover and out of fear that [her] arm would still need to be amputated." (*Id.* ¶ 7.) To this day, she continues to suffer from post-traumatic stress disorder and chronic pain that restricts her daily activities. (*Id.* ¶ 8.) Specifically, Kiser describes the following trauma:

> a.   The attack hurt my arm so badly I passed out multiple times from the pain, and only have a very vague recollection of being saved and taken to the hospital.
>
> b.   The injury to my arm was so significant a vein had to be harvested from my left leg, which involved further surgery and rehabilitation.

11

> c.  Despite the injury being primarily to my arm, I had to spend 42 days in a skilled nursing facility for intensive rehabilitation.
>
> d.  My doctors have also explained that the surgery may still fail if the vein collapses, and thus amputation remains a concern.
>
> e.  To this day my arm continues to have aches and pain even with little or no use.
>
> f.  Because of the injury I am no longer [able] to use it for activities I used to enjoy, such as gardening, loading a kayak or canoe, bringing in firewood, and other living activities of living alone on my small farm.

(*Id.* ¶ 9.) Accordingly, Kiser is requesting damages for pain in suffering in the amount of $50,000 per year for her average life expectancy of 79.9 years, for a total of $550,000. (*Id.* ¶ 9.) Given Kiser's affidavit and testimony, that amount is reasonable.

### D.  Emotional Distress: $550,000

The dog attack also caused Kiser "significant shock, terror and anxiety from which [she] is still recovering." (*Id.* ¶ 10.) More specifically, Kiser states:

> a.  I am terrified of dogs, especially ones that are barking or unrestrained. This has impacted my ability to walk and exercise as I had prior to the attack.
>
> b.  I wake frequently from nightmares re-living the attack and also have had trouble sleeping since the attack occurred.
>
> c.  My doctor has explained that my symptoms are consistent with PTSD, which includes startling easily, always being on guard for danger, agitation under normal circumstances, depression and crying spells.

12

    d.    I have withdrawn from social situations and am more comfortable in small settings or on my own, although prior to the attack I was a social person.

    e.    I live in constant daily fear that the surgery may fail and I will lose my arm.

(*Id.*) Kiser further avers that the "dog attack forever altered my emotion[al], physical, social and mental well-being[.]" (*Id.* ¶ 11.) Kiser is therefore requesting damages for emotional distress in the amount of $50,000 per year for her average life expectancy of 79.9 years, for a total of $550,000. (*Id.* ¶ 10.) Given Kiser's affidavit and testimony, that amount is reasonable.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that DEFAULT JUDGMENT is entered in favor of Kiser and against Jackson in the amount of $1,752,835.96.

There being no further issues in the case, IT IS FURTHER ORDERED that the Clerk shall enter final judgment consistent with this Order and the Court's February 23, 2024 Order on Summary Judgment, (*see* Doc. 39).

DATED this 2nd day of April, 2024.

_____
Donald W. Molloy, District Judge
United States District Court

13